Jasen, J.
(dissenting). I would reverse the order of the Appellate Division. A local correctional facility is not an institution within the parole jurisdiction of the State Board of Parole. Under State statute, the board is not required to hold a final parole revocation hearing until the prisoner has been returned to "an institution under the jurisdiction of the state department of correction or at such other place as may be designated pursuant to rules and regulations of the board.” (Correction Law, § 212, subd 7.) Our own cases and those in the Federal courts do not require otherwise.
Moreover, the Appellate Division committed a serious abuse of discretion when it ordered the release of this prisoner as the remedy for the board’s alleged failure to hold a prompt final revocation hearing. Petitioner pleaded guilty to a charge of narcotics possession and thereby confessed to a violation of the terms of his parole. Given the conclusive proof of parole violation, the Appellate Division punished the community at large, not the Board of Parole, by directing the release of this petitioner for the failure to hold a hearing that could not have resulted in anything other than revocation of parole. The prisoner, as a result, has been released not only from his confessed parole violation, but from his original sentence as well. This, in my view, does not accord with community safety or with sound justice.
The Board of Parole is charged with the duty of supervising all prisoners released on parole or conditionally released from institutions under the jurisdiction of the State Department of Correction. (Correction Law, § 210.) The Supreme Court has declared that, as a matter of constitutional due process, parolees charged with parole violations must be afforded a preliminary hearing promptly after arrest and an additional hearing before final parole revocation. (Morrissey v Brewer, 408 US 471.) The Correction Law makes provision for the enforcement of this right. "Whenever there is reasonable cause to believe that a person who is on parole or conditional release has violated the conditions thereof, the board of parole as soon as practicable shall declare such person to be delinquent. Thereafter, the board shall at the first available opportunity permit the alleged violator to appear personally, but not through counsel or others, before a panel of three members and explain the alleged violation. Such appearance shall be either *1052 at an institution under the jurisdiction of the state department of correction or at such other place as may be designated pursuant to the rules and regulations of the board.” (Correction Law, § 212, subd 7.) Pursuant to board rules, the preliminary hearing is conducted by a member of the board or by a designated employee of the Department of Correction. (7 NYCRR 1925.20 [a].) The final hearing, however, must be conducted by three members of the board with one member designated as the hearing officer. (7 NYCRR 1925.20 [b].) The board has extended to the parolee the right to be represented by counsel at both hearings. (7 NYCRR 1925.25.) The preliminary hearing is to be held "as soon as practicable” (7 NYCRR 1925.30 [a]), but the final hearing is to be conducted "as soon as practicable after the releasee’s return to a State correctional institution or at such other place as may be designated by the board.” (7 NYCRR 1925.30 [b].)
As the Supreme Court has made clear, the final revocation hearing need not be held, as a matter of constitutional law, until the parolee’s return to a State penal institution. Indeed, it was the "substantial time lag” between arrest and detention that prompted the need for a preliminary hearing. In Morrissey v Brewer (supra), the court stated "it may be that the parolee is arrested at a place distant from the state institution, to which he may be returned before the final decision is made concerning revocation. Given these factors, due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available.” (408 US, at p 485.)
The event which triggers the holding of the final hearing, under the due process standard as well as under State statute, is the return of the prisoner to a State institution. In Matter of Beattie v New York State Bd. of Parole (39 NY2d 445), the prisoner was returned to a State institution although he was not detained for parole violation but for separate criminal charges. The local prison facilities were overcrowded and the State agreed to house local detainees in its institutions. (See Correction Law, § 79.) However, the institution was one over which the Parole Board had parole jurisdiction and it was "immaterial that the technical form of the custody was by virtue of temporary detention due to inadequate detention facilities in the City of New York * * * The fact is that the *1053 parolee was in a place subject to the convenience and practical control of the Parole Board.” (39 NY2d, at p 447.)
The present case is far different. The prisoner, after being detained on parole violation charges, was housed in a local detention facility. A preliminary hearing was held there due to court order. Nearly four months lapsed between the preliminary hearing and prisoner’s plea of guilty to a charge of possession of a controlled substance in the seventh degree. He was sentenced to a three-month period of imprisonment, a term which was satisfied by the period served, pending disposition of the case, in the local facility. Shortly thereafter, the remaining criminal charge against him, petit larceny, was dismissed and prisoner was returned to a State facility. Three months passed between the return to a State facility and the holding of the final revocation hearing. At the hearing, it was determined that the prisoner had violated his parole and he was remanded to custody for a period of 15 months.
The local detention facilities within New York City are not institutions operated by the State Department of Correction and, hence, are not institutions of which the Parole Board has jurisdiction. Thus, Beattie is inapplicable to this case, for in Beattie the State, and not the city, had custody of the prisoner’s person. The majority, passing over the statutory requirement, reiterated in Beattie that the Parole Board have parole jurisdiction, contends that the local facilities are subject to the convenience and practical control of the Parole Board. Yet, there is no proof that the Parole Board or the State Department of Correction has any measure of practical control over the local detention facilities maintained by the City of New York. Moreover, the majority places undue reliance on the fact that a preliminary parole hearing was held by the board at the local facility. This was not done by the board for its own convenience, but pursuant to a court order. More importantly, there is a vast difference between the administrative details involved in a preliminary hearing and those involved in the conduct of a final hearing.
A preliminary hearing may be conducted by any designated employee of the Department of Correction. Presumably, such employees are available in all major corners of the State and, thus, holding preliminary hearings in local facilities causes no great inconvenience. On the other hand, a final hearing must be conducted by three members of the Parole Board itself. Hence, the board must select a site that is a reasonably *1054 convenient gathering place for its members. Moreover, by statute and administrative rule, if the site selected is not a State correctional facility, that determination is to be made by the board by rule, in its discretion. The majority, by holding that local facilities are within the jurisdiction of the board for the purpose of final revocation hearings, imposes a tremendous burden on the members of the board. In addition to attending hearings at State institutions, members must wander around the State, from local facility to local facility, for the purpose of holding final hearings. Since the board consists of only 12 members (Correction Law, § 6, subd 1), and final hearings must be "promptly” held, the members will have to jet around the State at a furious pace. In essence, members of the Board of Parole will have to ride the circuit, a task so arduous that Judges discarded it light years ago. Moreover, the administrative staff and supporting units will be strained to keep abreast of the flow of travel and paper.
In my view, the prisoner was entitled to his final revocation hearing only upon his return to the State correctional facility. A hearing was afforded him within three months of his return to State custody. The prisoner has produced no evidence that this hearing was not held at the first available opportunity. (Correction Law, § 212, subd 7.) Indeed, the Supreme Court has suggested that a lapse of two months would not be unreasonable. (Morrissey v Brewer, 408 US 471, 488, supra.)
This view is supported by the recent decision of the Supreme Court in Moody v Daggett (429 US 78). The court noted that the liberty interest of the parolee in his conditional release is an interest that is safeguarded by the due process clause of the Fourteenth Amendment. However, the court concluded that loss of protected liberty does not occur until the parolee is detained on the basis of his parole violation. (429 US, at p 85.) Here, defendant was never held as a parole violator until his return to the State correctional facility. His prior detention in the local facility was solely in connection with separate criminal actions pending against him. When those charges were satisfied, by way of time served and dismissal, the local officials relinquished their custody of petitioner and returned him to the custody of the Board of Parole. It was at this point that petitioner was held in his capacity as parole violator.
The majority does not purport to predicate its position upon constitutional principles, State or Federal. Indeed, Moody v *1055 Daggett (supra) would conclusively foreclose a holding that, as a matter of Federal constitutional law, an alleged parole violator held on other criminal charges is automatically entitied to an immediate final revocation hearing. The result would be no different under the State Constitution. The hearing to which the majority entitled alleged violators is of no practical significance until the violator is actually held for parole violation. A liberty interest in parole cannot be offended if parole violation is not the basis for the prisoner’s detention.
The majority’s decision is not predicated upon controlling statute or precedent. Indeed, the governing statute explicitly provides to the contrary. The majority does not hold the statute unconstitutional. Rather, it appears to predicate its decision upon its own view as to what constitutes proper parole policy. I submit that these policy considerations are for the Legislature and not for the courts. Of particular concern is that the Legislature has addressed itself to this issue and the majority, without even a citation to the governing statute, would substitute their judgment for that of the Legislature. There is no basis for judicial imposition of an exacting burden upon the Board of Parole in derogation of a constitutional enactment of the Legislature. Deference is due; this is no occasion for legislation by judicial opinion. Although members of the court may believe, wisely or not, that immediate final revocation hearings, at whatever location, are a necessary ingredient of a sound parole policy, the Legislature has provided otherwise and there is no contention that what has been provided is unconstitutional.
In any event, I believe that the remedy imposed by the Appellate Division was inappropriate. Defendant’s plea of guilty to the drug charge furnished conclusive proof of parole violation. The only practical purpose the hearing would serve was to fix the period to be served under the prior unexpired sentence. (See Matter of Beattie v New York State Bd. of Parole, 39 NY2d 445, 447, supra.) Assuming, arguendo, that defendant’s right to a prompt final hearing was violated, under these circumstances, I cannot accept the proposition that the proper remedy was to release the prisoner from custody. He has made no effort to desist from criminal activity and his premature release into the community will endanger the rights and safety of law-abiding citizens. Even if the Parole Board was derelict in its duty, and I submit it was not, *1056 release from custody is no fit remedy. Accordingly, I dissent and vote to reverse the order of the Appellate Division.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler and Fuchsberg concur in Per Curiam opinion; Judge Jasen dissents and votes to reverse in a separate opinion; Judge Cooke dissents and votes to reverse (see Moody v Daggett, 429 US 78).
Order affirmed, without costs.