342 So.2d 179 (1977)
STATE of Louisiana
v.
Darryl HARRIS.
No. 58512.
Supreme Court of Louisiana.
January 24, 1977.
Dissenting Opinion February 3, 1977.
Maurice T. Hattier, Orleans Indigent Defender Program, New Orleans, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William L. Brockman, Asst. Dist. Atty., for plaintiff-respondent.
CALOGERO, Justice.
We granted writs in this case upon application of Darryl Harris who complains that his probation in connection with a September 30, 1973 conviction and sentence was improperly revoked by the trial judge and his suspended sentence made executory on August 17, 1976.
The pertinent facts are these: on September 30, 1970, defendant pled guilty to the crime of attempted simple robbery in violation of R.S. 14:27 and R.S. 14:65. He was sentenced to serve two and one half years in Orleans Parish prison; execution of that sentence was suspended and defendant was placed on active probation for three years. Harris apparently complied with the conditions of his probation until March 27, *180 1971 when he was arrested for carrying a concealed weapon, a violation of R.S. 14:95. He was released on bond and on May 14, 1971 failed to appear in court, thus forfeiting his bond. Thereafter, on June 7, 1971, his probation officer filed an arrest warrant for material violation of the terms of his probation and for absconding from supervision. Harris did not thereafter report to his probation officer as required, apparently because he shipped out to sea as a merchant seaman and spent some time in California.
From May 1971 until January 23, 1974, when defendant was arrested on traffic and narcotics charges in the City of New Orleans,[1] he was considered by authorities as a fugitive from justice although no further effort was made to locate him. Following his arrest on January 23, 1974, defendant Harris was found guilty on the 1971 concealed weapon charge in the Criminal District Court for Orleans Parish. Harris asserts that he questioned the trial judge about the effect of this conviction on his 1970 probation, but that the judge assured him that the former probation period had already expired.[2] Harris was sentenced to serve six months in Orleans Parish Prison with credit for time served, and served three months in that institution before being released. Although the state presented no direct evidence of his whereabouts after that time or of any effort they made to find him, it appears that Harris may have continued his occupation as a seaman.
On July 22, 1976 the state filed a Rule to Show Cause why defendant's probation should not be revoked. After a hearing, Harris' 1970 probation was revoked and his two and one-half year suspended sentence made executory.
The issue now before us is whether the revocation of Harris' probation was timely made.[3] It was on September 30, 1970 that Harris was placed on three years' probation, a period which normally would have run on September 29, 1973, automatically terminating the probation. C.Cr.P. art. 898. During this period, however, on March 27, 1971, Harris was arrested for carrying a concealed weapon and a warrant was issued for violation of his probation. The charge against Harris was not prosecuted until January of 1974 when he was found guilty and served his sentence. It was not until July of 1976, almost three years after his probation would normally have terminated and over two years after his release from parish prison on the other charge, that any effort was made to revoke his probation. Code of Criminal Procedure Articles 898 through 901 govern suspended sentences and probation. One of these provisions, Article 899, sets out that:
"A. At any time during probation and suspension of sentence the court may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation, or may issue a summons to appear to answer to a charge of violation or threatened violation.

* * * * * *
"D. When a warrant for a defendant's arrest, issued under Paragraph A, cannot be executed, the defendant shall be deemed a fugitive from justice and the running of the period of probation shall cease as of the time the warrant was issued." *181 The state relies on this article, arguing that the warrant for Harris' arrest for probation violation had been issued on June 7, 1971 and could not be executed, a fact which made Harris a "fugitive" and caused the probationary period to stop running on the date the warrant was issued.
Defendant Harris, on the other hand, argues that the state has not established that the warrant could not be executed and alternatively that, even if Harris was a fugitive from June 7, 1971 (when the warrant was filed) to January 23, 1974 (when he was arrested), his three year probation period had nevertheless run before the state filed its rule to show cause in July of 1976. Harris argues that the full three years would have run prior to June 1, 1976, taking into account the time which had run from sentence on September 30, 1970 to warrant issuance on June 7, 1971 (eight months and seven days) and the time which had run between his January 23, 1974 arrest and June 1, 1976 (two years, four months, and seven days). According to defendant's analysis, the state's July 1976 attempt to revoke was therefore untimely.
This Court has recently faced the issue of timely revocation of probation and the effect of the issuance of a warrant on the running of a probationary period. In State v. Jones, 285 So.2d 231 (La.1973) we held that the fact that a probationer was in federal custody in another state at the issuance of the arrest warrant does not stop the running of the probation period because the warrant could have been executed. The Court found that the condition of Article 899that the warrant "cannot be executedhad not been fulfilled under these circumstances, and that the revocation after the running of the probation period was untimely.
The issue of a timely revocation hearing and claimed suspension of the probation period was again faced in State v. Martens, 338 So.2d 95 (La.1976) wherein we reaffirmed the Jones holding by stating that "a warrant to revoke probation must be executed in order for such warrant to suspend the running of the probation period in a situation where the filing of the warrant and its execution could have taken place within the probationary period." 338 So.2d at 96. In Martens, as in Jones, defendant was incarcerated for another offense during the time when warrants for revocation were outstanding. There we emphasized the fact that the state took no steps to execute the warrant during this period of time and held again that:
"[W]hen the state has grounds to revoke a probationer's suspended sentence (see C.Cr.P. art. 899) and when it is able to file its warrant within the probation period and proceed by service thereof and hearing promptly thereafter, then the state delays in doing so to their prejudice in light of Article 898 and the limited exception for suspension of the running of the period of probation provided in Article 899(D)." 338 So.2d at 97.
The situation now before us is governed by Articles 898 and 899 as well as the Jones and Martens cases. Like probationers Jones and Martens, Darryl Harris violated the terms of his probation and a warrant was issued for the revocation of that probation. In all three cases the warrant was not executed during the probation period, but the state in each case argued that the issuance alone was sufficient to toll the running of the probation period because the warrant could not be executed.
In the case before us, the state argues specifically that defendant's absence from the jurisdiction both before and after the 1974 trial and service of sentence made it impossible for the state to execute the warrant. Defendant concedes that he was absent from the jurisdiction for portions of the time between 1971 and 1974 but claims, nevertheless, that the rule to revoke probation was not timely because the state failed to execute the warrant and to hold a hearing during the time he was in parish prison on the weapons charge or shortly thereafter.
Defendant's admission of periodic absence from the jurisdiction prior to 1974 as well as some other evidence as to his marriage and divorce in another state indicate *182 that during at least part of the period from June of 1971 to January of 1974 the warrant could not be executed. But even if we assume that the probation period was suspended for the entire period from June 7, 1971 to January 23, 1974 (something that the state actually did not establish) then we nevertheless find, for reasons which follow, that the probationary period had run before the state acted in July of 1976 to revoke the probation.
Article 899 provides that when an arrest warrant "cannot be executed" the running of the probation shall cease. The official revision comment to this section explains that this provision applies "where the probationer has concealed himself or fled from the supervision locality, so that the warrant of arrest cannot be executed." In order to trigger the operation of this provision, the state must establish that the probationer has concealed himself or fled the area so as to prove that the warrant could not be executed. Here, at best, the state has established that the probationer did not report to his probation officer after early 1971 and that at various times from 1971 to 1974 he did not remain within the supervision locality. But there has been no showing that probationer's absence was the result of flight, nor that the warrant could not have been served during the periods of his presence within the jurisdiction or, more specifically, during the time of his incarceration in the very institution from which he was on probation. The state presented no evidence at all that it had attempted to execute the warrant, either before or after the 1974 incarceration, prior to July 1976. Harris' probation officer testified that, although three agencies (the New Orleans Police Department, the Louisiana State Police, and the Federal Bureau of Investigation) had been notified of the revocation warrant in 1971, none of these agencies communicated to him that Harris was incarcerated in Orleans Parish in 1974. He stated that corrections department policy prevents his making independent inquiry about a probationer after the issuance of the arrest warrant.
It is clear from this evidence that the probation period did run without suspension from the time of its imposition on September 30, 1970 to the issuance of the warrant on June 7, 1971, a period of eight months and seven days. Even if we assume that the probation period was suspended on that date, it began to run again when, on January 23, 1974, defendant was arrested on the traffic and narcotics charges and was therefore available for the state to execute the arrest warrant. The probation period continued to run during the period of his incarceration. The state presented no evidence that the warrant could not be executed on or after January 23, 1974, and we find that the probation period continued to run during this time. Therefore, adding the eight month-seven day period to the time following January 23, 1974, we find that Harris' three year probation period was satisfied prior to June 1, 1976, and that the state's subsequent effort to revoke his probation was ineffective.
For the reasons stated above, we reverse the judgment of the district court and discharge Harris from his sentence on the 1970 charge of attempted simple robbery.
SANDERS, C. J., dissents and assigns reasons.
SANDERS, Chief Justice (dissenting).
On September 30, 1970, Darryl Harris pled guilty to attempted simple robbery, and the trial judge placed him on supervised probation for three years.
Subsequent to his arrest on a concealed weapon charge, he absconded from supervision. On June 7, 1971, the probation officer secured a warrant for his arrest as a probation violator. Notices of the warrant were transmitted to the New Orleans Police Department and to the Federal Bureau of Investigation for nation-wide use.
In 1974, he was apprehended by the New Orleans Police Department, convicted of the weapons charge, and served a three-months sentence in Parish Prison. The probation officer received no notice that the probationer was in custody. After the defendant *183 was released, he remained at large until 1976, when he was apprehended under the outstanding warrant as a probation violator.
At the probation hearing, Harris admitted that he was aware that a condition of his probation required him to report to his probation officer monthly. He also admitted that he had absconded from probation, had left the state, and had failed to report to his probation officer since May 12, 1971.
The majority reverses the probation revocation because the probation period had expired. I disagree.
Article 899(D) of the Louisiana Code of Criminal Procedure provides:
"When a warrant for a defendant's arrest, issued under Paragraph A, cannot be executed, the defendant shall be deemed a fugitive from justice and the running of the period of probation shall cease as of the time the warrant was issued."
Thus, on June 7, 1971, when the arrest warrant was issued, the probation ceased to run. Unless the running of probation was resumed prior to defendant's 1976 arrest as a probation violator, the revocation hearing is timely.
The defendant contends that the running of probation resumed when he served the three-months sentence in 1974. I think not.
Under Article 899 of the Louisiana Code of Criminal Procedure, the probation officer has the responsibility of notifying the court of a probation violation and submitting a report as a basis for a revocation hearing. Concededly, the probation officer had no knowledge of the 1974 incarceration. Moreover, I find no basis in law for fictitiously imputing knowledge of the incarceration to the probation officer. Hence, in my opinion, the revocation was timely.
The cases of State v. Jones, La., 285 So.2d 231 (1973) and State v. Martens, La., 338 So.2d 95 (1976), relied upon by the majority, are distinguishable. In both of them the probation authorities had knowledge of the whereabouts of the probationer, but failed to execute the warrant. In State v. Jones, supra, the probationer brought his incarceration to the attention of the proper authorities and requested a speedy hearing on his probation violation.
For the reasons assigned, I respectfully dissent.
NOTES
[1] The possession of heroin charge was refused by the district attorney's office, and Harris paid a fifteen dollar fine on the charge of failure to stop at a stop sign.
[2] The trial was before a different judge of the Criminal District Court, in Section "E." While we are not sure that is precisely what he said to the judge, it is apparent from a portion of the transcript attached to the application that the district attorney interrogated Harris about the simple robbery conviction and the probation stemming from it.
[3] A second argument is made that defendant's right to due process was violated by lapse of a five year period between the time of the issuance of the arrest warrant for probation violation and the revocation hearing afforded probationer. We find no federal due process violation in this delay because Harris was afforded a hearing within one month after he was taken into custody for probation violation. Moody v. Daggett, ___ U.S. ___, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976).