[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
On May 6, 2002, the Respondent filed a petition for a writ of habeas corpus asking that this Court order the petitioner transferred out of the Northern Correctional Institution to a level 4 facility. He argues that he was not afforded the appropriate due process in the determination to place him in Administrative Segregation.
Findings of Fact
1. The petitioner was convicted pursuant to his plea of guilty to two counts of violation of probation and two counts of larceny on September 6, 2000. He received a sentence of three years, six months of incarceration.
2. On October 31, 2000, the petitioner was placed in the Chronic Disciplinary Unit (CDU) at the Manson Youth Institution.
3. The petitioner accumulated a total of eleven Disciplinary Reports during his stay at the CDU.
4. These Disciplinary Reports included citations for: flagrant disobedience, fighting, destruction of property, possession of contraband, and impeding order.
5. The final disciplinary report arose out of an incident in July 2001 in which the petitioner deliberately plugged up the toilet in his cell with toilet paper and flooded out the tier to which he was assigned.
6. This resulted in the petitioner being transferred out of the CDU and into the Northern Correctional Institution where he was placed in administrative segregation.
7. On August 10, 2001, the petitioner was given proper notice of his CT Page 2916 administrative segregation hearing. This notice specifies the basis upon which the administrative segregation was being sought. The petitioner selected an advocate to represent him at this hearing. Receipt of this document was acknowledged by the petitioner's signature upon the paper. See Respondent Exhibit A.
8. At the hearing the decision to place the petitioner in administrative segregation was affirmed.
9. At this hearing, the petitioner had a full opportunity to make a statement and call witnesses on his own behalf. He declined to do so.
10. At the conclusion of the hearing, the petitioner was advised of his right to appeal the decision to Director Levesque.
Discussion of Law
The writ of habeas corpus is one of the most time-honored features of Anglo-American jurisprudence. It serves as a bulwark to prevent abuse by the sovereign of its power to unconstitutionally or unlawfully incarcerate citizens. As such, the writ may clearly be used to challenge illegal detention. "Habeas corpus provides a special and extraordinary legal remedy for illegal detention . . . The deprivation of legal rights is essential before the writ may be issued . . . Questions which do not concern the lawfulness of the detention cannot properly be reviewed on habeas corpus . . . When a habeas petition is properly before a court, the remedies it may award depend on the constitutional rights being vindicated . . . Further, any remedy must be commensurate with the scope of the constitutional violations that have been established." Johnson v.Commissioner of Correction, 258 Conn. 804 at 813 (2002). The key to the successful invocation of the writ is proving illegal detention.
In this case, the petitioner does not seek release from confinement, but seeks the Court to order that he be classified at a level that would permit him to be released from administrative segregation. The petitioner takes issue, not with his detention in general, but with his specific classification in detention. It is clear that the Courts and judges have no business in micromanaging the day-to-day operation of the Department of Corrections. "Prison administrators are responsible for maintaining internal order and discipline, for securing their institutions against unauthorized access or escape, and for rehabilitating, to the extent that human nature and inadequate resources allow, the inmates placed in their custody. The Herculean obstacles to effective discharge of these duties are too apparent to warrant explication. Suffice it to say that the problems of prisons in America are complex and intractable, and, more to CT Page 2917 the point, they are not readily susceptible of resolution by decree. Most require expertise, comprehensive planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. For all of those reasons, courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." Procunier v. Martinez,416 U.S. 396 at 405 (1974).
The Commissioner of Correction has broad discretion to classify prisoners. See CGS § 18-81. Likewise it is well established that an inmate has no constitutional right to a particular classification. "We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right. In Meachum v. Fano, 427 U.S. 215 (1976), for example, no due process right protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even when that transfer visited a "grievous loss" upon the inmate." Moocy v. Daggett,429 U.S. 78 (1976). Nevertheless, prisoners are entitled to some minimal due process protection. `While it is true that prisoners may not be deprived of life, liberty, or property without due process of law, Hainesv. Kerner, 404 U.S. 519 (1972), `prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.' Morrissey v. Brewer,408 U.S. 471, 488 (1972)." Burke v. Warden, 2000 Ct. Sup. 9282
at 9285-86 (Bishop, J.)
Here in Connecticut, the prisoner is at least entitled to notice of the change in classification and an opportunity to be heard. It is clear that the petitioner was afforded sufficient due process. He was given appropriate notice of the change in classification and given an opportunity to present his case before a hearing officer. In light of this, there is no constitutional infirmity in the manner in which the petitioner's classification was changed and his subsequent transfer to the Northern Correctional Institution.
 Accordingly, the Respondent's Motion to Dismiss is denied.
S.T. Fuger, Jr., Judge CT Page 2918