Daniel RHODES

v.

U. S. PAROLE COMMISSION.

Civ. No. B–77–249.

United States District Court,
D. Connecticut.

Dec. 1, 1977.

18

Judith P. Resnik, Yale Legal Services, New Haven, Conn., for petitioner.

Diana Garfield, Asst. U. S. Atty., New Haven, Conn., for respondent.

## MEMORANDUM OF DECISION

NEWMAN, District Judge.

Petitioner, Daniel Rhodes, an inmate at Federal Correctional Institution, Danbury, alleges that a parole violator warrant issued by the United States Parole Commission (then the Board of Parole and hereinafter the Commission) and currently lodged against him as a detainer is unlawful and should be quashed. The chronology of events preceding this action is lengthy and complex. It may be helpful to recite the major episodes by way of introduction and reserve the details until discussion of specific claims.

On July 2, 1973, petitioner was mandatorily released from federal custody "as if on parole" pursuant to 18 U.S.C. § 4164. His parole supervision was to end on August 8, 1974, 180 days before the end of his maximum term. On July 26, 1974, petitioner was arrested and charged with mail fraud, and on August 1, 1974, a parole violator warrant was issued, but held unexecuted pending disposition of the criminal charges. On November 11, 1974, petitioner was in-

dicted for mail fraud, 18 U.S.C. §§ 1341, 1342, and false representation on a bank loan application, 18 U.S.C. § 1014.

On January 6, 1975, the violator warrant, still unexecuted, was supplemented with charges of failing to appear in court as scheduled and failing to report a change of residence. On October 28, 1975, petitioner pled guilty to making the false bank loan application, and the mail fraud charges were dropped. Petitioner was then convicted and sentenced on Pennsylvania state charges and also in United States District Court for Rhode Island on unrelated federal charges. The violator warrant was again supplemented on September 7, 1976, with the state conviction and with a conviction for mail fraud (which petitioner denies ever occurred).

The Commission held dispositional reviews on January 10, 1977, and June 23, 1977, and in each instance decided to let the detainer stand. On August 19, 1977, the Commission amended the violator warrant by withdrawing the supplement of January 6, 1975, and the supplement of September 7, 1976, insofar as the latter related to the Pennsylvania state conviction. The supplement alleging a conviction for mail fraud was left in place. Petitioner is now in Danbury serving the sentence imposed by the Rhode Island District Court.

## I.

Petitioner's major complaint relates to the delay in executing the violator warrant. The warrant was issued on August 1, 1974, but was held in abeyance pending the disposition of criminal charges that underlay its issuance. The warrant has not yet been executed, and consequently petitioner has not had a revocation hearing. He argues that this delay is unreasonable and that the warrant should be quashed.

■ The practice of holding a warrant in abeyance while criminal charges that gave rise to it are pending is specifically authorized by current regulations, 28 C.F.R. § 2.44(b), and was clearly contemplated by the regulations then in force. 28 C.F.R. § 2.52(c) (1975), currently 28 C.F.R. § 2.46(c). This Circuit approved such a delay in *Avellino v. United States,* 330 F.2d 490, 491 (2d Cir. 1963), *cert. denied,* 379 U.S. 922, 85 S.Ct. 280, 13 L.Ed.2d 336 (1964), and the propriety of this practice was recently reaffirmed in a thoughtful opinion by Judge Weinfeld in *United States ex rel. LiPuma v. Gengler,* 411 F.Supp. 948, 950 (S.D.N.Y.1976).

The *LiPuma* decision articulates four policy reasons for delaying execution of a warrant. Petitioner argues that since those objectives have not been realized in this case, the warrant must be quashed. That argument misses the mark. The issue is not whether petitioner would be better off now if the warrant had been executed then, but rather whether the failure to execute it when issued was wrongful at that time. The permissibility of holding a warrant in abeyance while criminal charges are pending is not undermined because on the facts of one case the practice did not effectuate all the policy objectives usually achieved.

Moreover, I cannot accept petitioner's claim that the policy objectives cited by *LiPuma* as justifying a delay in execution were not served here. The first justification for delay is "permitting a parolee to clear himself of the criminal charges, with the likelihood, if he succeeds, that the warrant will not be executed." 411 F.Supp. at 950. Without deciding whether the dismissal of mail fraud charges in connection with a guilty plea on another count "clears" the defendant, it is apparent the petitioner cannot now claim non-fulfillment of this policy objective, for the Commission has not yet executed the warrant and may elect never to execute it. Thus, petitioner cannot say with certainty now that this objective will not be fulfilled.

The second objective identified in *LiPuma* has been achieved. The petitioner was not faced with the dilemma of electing whether or not to testify in a parole revocation proceeding while criminal charges arising from the same conduct were still pending. Similarly, the delay in execution and the intervening dismissal of the mail fraud

criminal charges have prevented the possibility of inconsistent findings of fact, thus serving the third *LiPuma* policy. Finally, the delay in execution precluded the possibility of prejudicing the defendant's criminal defense by removing him from the district while it was pending to attend a revocation proceeding. Thus the fourth and final *LiPuma* objective was also achieved.

In summary, the delay in execution from the time the warrant was issued up until the disposition of the pending criminal charges was a permissible practice, and the policy objectives underlying that practice were in fact achieved. I turn next to a consideration of the second segment of the delay, the period that runs to the present and began on October 28, 1974, when the mail fraud charges were dropped and he was convicted of making a false bank loan application, 18 U.S.C. § 1014.

■ During this period the petitioner has been continuously incarcerated, first under the 18-month sentence imposed for the false statement conviction and then under a concurrent three-year sentence imposed by the United States District Court in Rhode Island on an unrelated federal charge. Petitioner apparently contends that the failure to execute the warrant arising out of the mail fraud allegations while he has been incarcerated for these other offenses constitutes an unreasonable delay.

The starting point for considering the necessity of executing a violator warrant lodged as a detainer against a prisoner is the Supreme Court's recent decision in *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). *Moody* differs from the instant case in that the prisoner there was incarcerated following a criminal conviction for the very acts that were the basis for the violator warrant. In the present case the charges of mail fraud underlying the violator warrant have never been adjudicated, and the present incarceration is for convictions arising out of conduct unrelated to the allegations of the violator warrant. Petitioner could argue that he has been denied due process because the allegations on which the violator warrant is based have

neither been adjudicated nor reviewed in the context of a revocation proceeding.

This argument must fail after *Moody,* however, for the mere existence of an outstanding violator warrant lodged as a detainer does not deprive petitioner of any protected liberty interest. As in *Moody,* the confinement itself is not due to the detainer, but to the conviction for a criminal offense. 429 U.S. at 86, 97 S.Ct. 274. Issuance of the warrant does not mean his parole will necessarily be revoked. *Id.* at 87, 97 S.Ct. 274. Any interest in avoiding the risk that parole revocation time might be imposed consecutively to the present sentences can be achieved if the Commission later decides not to revoke parole. *Id.* at 87–88, 97 S.Ct. 274. The outstanding detainer does not affect the possibility of parole on the present sentence since the same tribunal, the Parole Commission, will consider both parole from the present sentence and revocation of the earlier parole. *Id.* at 88, 97 S.Ct. 274. Finally, whatever adverse impact the detainer has on conditions of confinement is insufficient to constitute a protected liberty interest. *Id.* at 88 n. 9, 97 S.Ct. 274.

■ The conclusion that petitioner is not now entitled, as a matter of constitutional right, to a revocation hearing does not end the inquiry, however. As noted above, in *Moody* the petitioner's conduct underlying the violator warrant had already been adjudicated in a criminal proceeding, and the petitioner's evidence had been heard and preserved. The Court implicitly recognized the significance of this when, in the course of finding the alleged liberty interests insubstantial, it noted "[p]etitioner further claims that evidence of mitigation may be lost if the revocation hearing is not held promptly, but he makes no claim that there is *additional* evidence in his case which may be vitiated by a delay." *Id.* at 88 n. 9, 97 S.Ct. at 279 (emphasis added). In *Moody,* the prisoner did not claim that there was additional evidence beyond that introduced and preserved at trial which would be lost by delay. In the present case petitioner has not had an op-

portunity to preserve any evidence and so theoretically runs the risk that all his evidence may be lost by delay. Petitioner's Memorandum of Law on file with this Court does not, however, allege that specific witnesses or documents have or will become unavailable because of delay in holding the revocation proceedings. If such claims are made, "the Commission has the power . . . to conduct an immediate hearing at which petitioner can preserve his evidence." *Id.* at 88 n. 9, 97 S.Ct. at 279, citing 18 U.S.C.A. § 4214(b)(2) and 28 C.F.R. § 2.47 (1976). Thus, although the Commission may constitutionally elect to refuse to hold an immediate revocation hearing, the Commission may voluntarily give petitioner a hearing in order that he may preserve his evidence, or even give the prisoner a full revocation hearing right away. See 28 C.F.R. § 2.47(b)(3) (1976).

The Commission's freedom to delay the revocation hearing until the end of incarceration may be circumscribed, however, by a further consideration. When a revocation hearing is held only after a long period of incarceration, the witnesses and documents necessary for the petitioner's presentation may no longer be available. This could present the situation contemplated by the Second Circuit when it suggested that "[i]f the delay in granting a hearing were to prevent a prisoner from having the fair hearing contemplated by statute, he would be entitled to release." *United States ex rel. Buono v. Kenton*, 287 F.2d 534, 536 (2d Cir. 1971). When a prisoner's evidence relating to conduct underlying the violator warrant has not been preserved in a criminal trial or other proceeding, the Commission's delay of the revocation hearing until the end of incarceration may preclude the prisoner from getting a fair hearing on the charges. In such a case revocation could not fairly be imposed. The determination of whether delay prevents a fair hearing should not be made by a court, however, until the Commission actually does revoke parole. At that time, and not before, a court may properly decide whether the petitioner was so prejudiced by the delay that revocation cannot be permitted.

## II.

Petitioner's second claim relates to the circumstances surrounding his arrest for mail fraud. I will accept the petitioner's version of the facts as true for the limited purpose of disposing of this petition, because even the facts as alleged fail to state a valid claim.

Under the terms of petitioner's mandatory release from his initial sentence, the expiration date of his parole supervision was August 8, 1974—the maximum term less 180 days. 18 U.S.C. § 4164. Shortly before that date, on July 25, 1974, petitioner reported for his monthly personal visit with his probation officer. Petitioner claims the probation officer led him to believe that he was no longer under supervision from that date on. Later that day petitioner was taken into custody by postal inspectors and held overnight for questioning. On the following day, July 26, 1974, petitioner was arrested and charged with mail fraud. This arrest is the basis for the violator warrant issued against him. Petitioner, relying on his belief that he was no longer under supervision, then made a statement to an Assistant United States Attorney. Petitioner also alleges that in April of 1974 he had met with postal inspectors and an FBI agent and that they had agreed to delay proceeding with the mail fraud investigation until after petitioner's parole supervision had ended.

It is unclear exactly what in the circumstances described is alleged to justify quashing the detainer. Petitioner may be claiming that the period of supervision terminates when the parole officer says it does, regardless of the statutorily computed duration, but the probation officer certainly did not have authority to waive the statutory period. Nor has petitioner claimed that his "unintelligent waiver of his Fifth Amendment right not to incriminate himself" affected any criminal proceedings subsequently brought against him. Instead, after reciting the facts, he merely asserts that because of that "unintelligent waiver"

the "Commission should be estopped from relying upon Petitioner's arrest and statements, and the warrant based on the arrest of July 26, 1974, should be quashed." Reading this conclusory assertion in the light most favorable to petitioner, I do not believe it states a claim that warrants quashing the detainer.

Petitioner's claim to have the detainer quashed may be based on the following chain of causation: but for the misrepresentation about the end of supervision he would never have consented to talk to the postal inspectors; but for that conversation he never would have been arrested; but for the arrest he would not have talked to the Assistant United States Attorney; and but for his conversation with the Assistant there would not be sufficient evidence to justify revoking parole. If this is petitioner's claim, it may have merit, but this is not the time to adjudicate it. As noted above, the mere existence of a detainer does not adversely affect a protected liberty interest. *Moody, supra.* Petitioner's injury will ripen into a justiciable wrong only if his parole is revoked and if that revocation can be traced to the statement petitioner claims was wrongfully obtained from him as a result of his "unintelligent waiver."

It should be noted that this particular claim may very well turn on facts likely to be disputed. Consequently this may be the kind of claim in which a long delay between the events and the revocation hearing may make a fair hearing impossible. That determination, however, must wait until the Commission orders revocation.

### III.

Petitioner's third and fourth claims challenge the power of the Commission to add grounds for parole revocation after initial grounds have been alleged. The claims attack two slightly different practices: filing a second or "supplemental" application for a second warrant and filing a "supplement" to an application for the first warrant.

Petitioner's claim as to filing a supplemental application for a second warrant is that the Commission cannot issue a warrant for parole revocation after the period of supervision has ended, 28 C.F.R. § 2.44(c) (1976), and that the issuance of one warrant *within* the supervision period does not enable the Commission to issue additional warrants after supervision has ended. This issue is now moot.

After the original warrant was issued following the arrest for mail fraud, the Commission added supplemental warrants on January 6, 1975, charging the petitioner with failure to appear at a court hearing and failure to report a change of residence. On September 7, 1976, the Commission added petitioner's conviction in Pennsylvania. On August 19, 1977, the Commission withdrew those charges, and the brief filed by the Government agrees that those charges were properly stricken. Thus it is not necessary to consider them.

■ More problematic is petitioner's claim that the Commission has no power to supplement a lawfully entered warrant application. "Supplementing applications" apparently means updating a warrant already issued. For example, where a warrant is issued because of alleged misconduct on parole, it may be supplemented by the allegation that the parolee has been indicted for that conduct. Insofar as supplementing warrants means updating the status of the charges, it is nothing more than an administrative practice that does not adversely affect the parolee. The parole revocation decision is based on conduct that occurred during parole, not the fact that the parolee was later indicted or convicted for that conduct. When a warrant is issued lawfully, a "supplement" is not prohibited when it merely records the disposition of proceedings related to the very conduct that gave rise to the warrant itself.

■ Petitioner is understandably concerned about the portion of the September 7, 1976, supplement to the warrant, which added an alleged conviction for mail fraud. Although petitioner was arrested for mail fraud on July 26, 1974, those charges were dropped when he pled guilty to making a false bank loan application. As far as the

record shows, petitioner has never been convicted of mail fraud. The supplement is apparently erroneous.

Once again, however, the petitioner's claim is not one that warrants a judicial remedy at this time. The mere existence of that charge in the warrant does not affect any protected liberty interest. *Moody, supra.* If and when his parole is revoked, and if the mail fraud conviction is relied on, petitioner may then attack such a revocation by challenging the truth of the conviction record. There is no need to consider whether the Commission has power to supplement the warrant with petitioner's conviction for making a false bank loan application because the Commission has not chosen to do so.

### IV.

Petitioner's final claims relate to the Commission's failure to give him a prompt and proper dispositional review of the detainer based upon the warrant. The claim of improper delay in holding the review is based on 18 U.S.C.A. § 4214(b)(1) (Supp. 1977), which provides that when a violator warrant is issued and lodged as a detainer against a prisoner "[s]uch detainer shall be reviewed by the Commission within one hundred and eighty days of notification to the Commission of placement." See 28 C.F.R. § 2.47(a) (1976). In this case the Commission was notified that the warrant had been lodged on February 6, 1976. The initial dispositional review occurred on January 10, 1977—339 days later. Petitioner alleges that this delay exceeds the 180-day limit mandated by statute and therefore the detainer should be quashed.

■ Because the statute's effective date was May 14, 1976—in the middle of the delay complained of—the threshold issue is the effect of the statutory time limit on petitioner's detainer. There are three ways the statute could be applied to detainers the Commission had already been notified of when the statute went into effect. First, the statute might not apply at all to pending detainers. The effect of this, however, would be to create an anomaly between post-effective date detainers, which would be subject to a strict 180-day time limit, and existing detainers, which could languish indefinitely.

Alternatively, if the statute were applied literally to all detainers already existing as of the effective date, then dispositional reviews would be automatically overdue on any detainer the Commission had been notified of more than 180 days before. The third, and I think most appropriate, reading is that as to detainers outstanding as of the effective date of the statute, the 180-day period should run from the effective date.

■ Therefore the Commission should have reviewed the petitioner's detainer not later than 180 days after May 14, 1976, that is, by November 11, 1976. The review did not occur until January 10, 1977. This delay cannot be attributed wholly to dilatory tactics by the Commission, however. The Commission sent forms for initiating a dispositional review to the prisoner at the Washington County, Pennsylvania Jail on September 15, 1976—well within the 180-day period. On September 22, 1976, the Commission was notified that the petitioner had been transferred to the State Correctional Institution at Rockview and that the forms were being sent there. On November 1, 1976, still within the 180-day period, the Commission sent duplicate forms to Rockview. On November 16, 1976, the Commission responded to petitioner's request for counsel by directing him to apply to the chief probation officer for the Middle District of Pennsylvania, and stated that the Commission would delay until the petitioner responded. Petitioner claims to have sent these forms to the probation officer, but the officer denies ever receiving them. On January 10, 1977, the Commission held a dispositional review and decided to let the detainer stand.

On these facts it appears that the Commission made a good faith effort to comply with the 180-day time limit. I think the additional delay was excusable. In any event the delay does not justify quashing the detainer. Petitioner has not alleged

any facts to suggest that the dispositional review would have produced a different result if it had been held within the 180-day period.

Petitioner also alleges that the dispositional review was improper since it was held without the benefit of a "written application containing information relative to the disposition of the warrant," which petitioner was entitled to provide and which he was entitled to have counsel help him prepare under 28 C.F.R. § 2.47(a). Moreover, petitioner claims he was prejudiced because at the time of the dispositional review, the warrant application still contained the supplement of January 6, 1975, alleging a failure to appear in court and failure to report a change of address, and the supplement of September 7, 1976, referring to his Pennsylvania state conviction. As noted above, the Commission has since conceded that these supplements were improper and has deleted them. Petitioner also claims that the same defects infected the second dispositional review which the Commission held on June 23, 1977.

These claims do not warrant quashing the detainer. It does appear, however, that petitioner has not yet had a dispositional review which comports with the requirements of the regulations. 28 C.F.R. § 2.47 (1976).

Therefore it is hereby

ORDERED that the Parole Commission shall within sixty days conduct a dispositional review of the detainer outstanding against the petitioner which comports with the requirements of the statute and regulations.