**William O'CALLAGHAN, Plaintiff,**

v.

**R. O. ANDERSON, et al., Defendants.**

**Civ. No. 80–0313.**

United States District Court, M. D. Pennsylvania.

April 8, 1981.

---

1. See 29 U.S.C. §§ 201; 203(r)

William C. O'Callaghan pro se.

Gordon A. D. Zubrod, Asst. U. S. Atty., Scranton, Pa., for defendant.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

### I. INTRODUCTION

This litigation concerns the scope of a federal prisoner's right to procedural due process. William O'Callaghan, a former inmate at Allenwood Federal Penitentiary, initiated this suit for injunctive and monetary relief. Subject matter jurisdiction presumably rests on 28 U.S.C. § 1331 and the Due Process Clause of the Fifth Amendment. *Davis v. Passman*, 442 U.S. 228, 245–48, 99 S.Ct. 2264, 2276–78, 60 L.Ed.2d 846 (1979). The plaintiff claims that the defendants flouted his procedural rights by the manner in which they found him guilty of a disciplinary infraction. The Government has moved to dismiss the complaint for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment.

In January 1980, O'Callaghan received an institutional "incident report" accusing him of transgressing a prison regulation. Specifically, he was accused of "being unsanitary, failing to keep [his] quarters in accordance with posted standards."[1] The matter was referred to a Unit Disciplinary Committee ("UDC") for consideration. The UDC held a hearing which did not contain the full umbrella of procedural rights recognized in *Wolff v. McDonnell*, 418 U.S. 539,

---

1. The Government states that this regulation, known as "Code 330," was published in Bureau of Prisons Policy Statement 5270.3 (March 21, 1979).

94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). O'Callaghan was permitted to make a statement and to present evidence in his possession. In line with applicable regulations, however, the UDC did not allow the inmate to call witnesses on his behalf.[2] The plaintiff was found guilty.

According to 28 C.F.R. § 541.13, a UDC has two options once it decides that an inmate has committed an institutional infraction. In the event that the violation is "minor," the panel may impose appropriate sanctions. If, conversely, the transgression is serious and, therefore, potentially implicates a greater degree of punishment, the UDC must refer the matter to an Institutional Disciplinary Committee ("IDC") for a further hearing replete with the *Wolff* procedural protections. 28 C.F.R. § 541.14. In the instant case, the UDC followed the former course of action. O'Callaghan's quarters were removed from "preferred housing" to the "hallway." [3]

The complainant presently contends that the UDC violated his due process rights by not affording him greater procedural protections. O'Callaghan particularly attacks the decision of the panel to refrain from taking testimony and to deny him the right to call or cross-examine witnesses. He claims that this procedure rendered the proceeding a sham. Assessment of this proposition requires an examination of procedural due process.[4]

## II. ALLEGATION OF HARASSMENT

One other item must be addressed before the court reaches the merits of the litigation. On August 7, 1980, the plaintiff contacted the court and explained the defendants were harassing him by interfering with his mail and delaying his transfer to a Community Treatment Center ("CTC").[5] The court ordered the Government to respond to these allegations.

The defendants have submitted several letters which demonstrate that O'Callaghan was in fact transferred to a CTC in Camden, New Jersey, soon after his protest. These documents, moreover, demonstrate that the Government never intended to delay the move. *See* the attachments to Document 19 of the Record. The complainant has not attempted to contradict the defendants' version of the facts. Furthermore, the court has learned through the Allenwood Record Office that the plaintiff was paroled in December 1980. In light of these developments, it can be concluded that O'Callaghan was not prevented from presenting his case because of any improprieties on the part of the Government. Furthermore, the complaint will be dismissed as moot to the extent that it seeks injunctive relief. *Weinstein v. Bradford*, 423 U.S. 147, 148–49, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975).

## III. LEGAL DISCUSSION

Procedural due process analysis must occur in two steps. Initially, the trier of fact

---

**2.** As shall be explained, UDCs do not have the authority to punish serious infractions. Hence, their procedure is more streamlined than that required by *Wolff v. McDonnell*. The procedural rights that a prisoner has before a UDC are set forth at 28 C.F.R. § 541.13. The record does not contain any violation of these standards.

**3.** The complaint contains an allegation that the plaintiff also lost his furlough privileges. The affidavits of the defendants, however, state that the housing change was the only sanction imposed. *See* the attachments to Document 11 of the Record. O'Callaghan did not controvert this position in his opposition to the summary judgment motion. *See* Document 16 of the Record. The complainant was informed that under Federal Rule of Civil Procedure 56(e) he could not resist the Government's summary

judgment motion by merely resting on his pleadings and that he had a duty to produce an affidavit or other form of documentary evidence demonstrating material issues of fact. *See* Document 12 of the Record. Since O'Callaghan has not contested the movant's assertions on the degree of punishment, the court shall accept the fact that he only suffered a transfer in housing.

**4.** As recognized by the Government, O'Callaghan's claim is limited to an assault on the UDC procedure. His pleadings and other submissions contain some extravagant statements implying that the defendants acted in bad faith. Yet nothing in the record supports an allegation of fraud or other obstruction of justice.

**5.** This move would be preliminary to parole.

has to determine if the challenging litigant has a sufficient "liberty" or "property" interest at stake to trigger the protection of either the Fifth or Fourteenth Amendment. If the answer to this inquiry is affirmative, it is then necessary to decide the type of hearing that is required to afford that interest adequate protection. *Morrissey v. Brewer*, 408 U.S. 471, 481–90, 92 S.Ct. 2593, 2600–04, 33 L.Ed.2d 484 (1972). In order to prevail, O'Callaghan must demonstrate that: (1) he has an adequate liberty interest to give rise to due process protection and (2) the nature of the interest is such that he deserves the procedural safeguards demanded. Under the facts of this suit, he fails on both counts.

■ The existence of a "liberty interest" is itself a bifurcated question. First, the plaintiff must demonstrate that a binding provision of state or federal law sufficiently limits official discretion to give him a "legitimate expectation" that a particular deprivation will not occur in the absence of a particular factual situation. *Moody v. Daggett*, 429 U.S. 78, 88 n.9, 97 S.Ct. 274, 279 n.9, 50 L.Ed.2d 236 (1976); *Montayne v. Haynes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976); *Meachum v. Fano*, 427 U.S. 215, 223–29, 96 S.Ct. 2532, 2537–40, 49 L.Ed.2d 451 (1976). It is safe to assume that this requirement is satisfied in the instant case. According to 28 C.F.R. § 541.13, a UDC may not impose sanctions unless the finding is "supported by substantial evidence" and preceded by specific procedures. Such a regulation can give rise to a "legitimate expectation" necessary to trigger the Due Process Clause. *Bryant v. Carlson*, 489 F.Supp. 1075, 1080–82 (M.D.Pa. 1979). This court, moreover, has held that the latter constitutional provision may grant inmates the right to expect some type of hearing before a conscious infliction of punishment by the authorities, even in the absence of an independent legal "entitlement." *Christy v. Hammel*, 87 F.R.D. 381, 388–90 (M.D.Pa.1980).

■ The second essential ingredient to a "liberty interest" concerns O'Callaghan's actual stake in the litigation. In his concurrence and dissent to *Wolff v. McDonnell*, 418 U.S. at 594, 94 S.Ct. at 2993, Justice Douglas stated, "Of course, a hearing need not be held before a prisoner is subjected to some minor deprivation, such as an evening's loss of television privileges." This is a sound observation. The Supreme Court has often admonished the federal judiciary to refrain from intervention into the day-to-day affairs of prison administration when such action is not necessary to safeguard constitutional rights. *Bell v. Wolfish*, 441 U.S. 520, 546–48, 99 S.Ct. 1861, 1877–79, 60 L.Ed.2d 447 (1979); *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 126, 97 S.Ct. 2532, 2538, 53 L.Ed.2d 629 (1977); *Meachum v. Fano*, 427 U.S. at 228–29, 96 S.Ct. at 2540. If courts plunged into every minor regulatory transgression, they would be forced to interfere with penal authorities in many types of situations totally divorced from the interests that the Due Process Clause was designed to protect. After construing the various authorities concerning prisoners' rights, this court has held that relief is inappropriate unless the plaintiff is confronted with a substantial deprivation or "grievous loss." *Bryant v. Carlson*, 489 F.Supp. at 1087–88. See also *Steadham v. Petrovsky*, Civil No. 80–0050, slip op. at 5 n.5 (M.D.Pa., March 31, 1981); *Christy v. Hammel*, 87 F.R.D. at 389 n.16; *Conklin v. Fenton*, Civil No. 78–0508 slip op. at 12–15 (M.D.Pa., September 28, 1979). The punishment suffered by O'Callaghan, *i. e.*, a change in sleeping quarters, can hardly be considered serious. Indeed, his situation closely parallels Justice Douglas's hypothetical inmate denied an evening's television privileges. Due process simply does not attach.[6]

Even more importantly, the plaintiff's claim would fail even if he had identified a tangible "liberty interest" shielded by the Fifth Amendment. Procedural due process

---

6. *See also Jordan v. Jones*, 625 F.2d 750, 750–51 (6th Cir. 1980) (". . . three days separation of plaintiff from the prison population and its normal privileges while restricted to his own cell, do not present a federal constitutional issue.").

is clearly a pliant concept; the minimum safeguards necessary in a particular situation expand and contract as required to protect the particular interest at issue. This proposition is very true in the prison context. In *Wolff v. McDonnell*, for example, the Supreme Court set forth a clear set of procedural rights that must accrue to prisoners before they are denied good time credits. 418 U.S. at 563–80 & n.19, 94 S.Ct. at 2978–2986 & n.19. These same procedures have been respectively found appropriate when prisoners are subjected to pre-release parole revocation or "keeplock" for one week. *Christopher v. United States Board of Parole*, 589 F.2d 924, 929–32 (7th Cir. 1978); *McKinnon v. Patterson*, 568 F.2d 930, 935–40 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978).[7] The Court of Appeals for the Sixth Circuit, moreover, actually increased the notice requirements established by *Wolff* when Tennessee authorities placed an inmate who had not committed a specific infraction in administrative segregation in order to safeguard institutional security. The panel explained that this added protection was necessary to assist the inmate in presenting his or her case at a hearing. *Bills v. Henderson*, 631 F.2d 1287, 1294–96 (6th Cir. 1980).[8]

In *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the Supreme Court stated that the following factors must be weighed to determine the type of process an individual deserves in a particular situation:

> ... First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures

used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

This analytical framework also applies to prisoners. *Christopher v. United States Board of Parole*, 589 F.2d at 929–30; *Bryant v. Carlson*, 489 F.Supp. at 1083. Application of the *Eldridge* rationale utterly undermines the instant complaint.

■ The interests that O'Callaghan has at stake, a loss of minor privileges, is virtually *de minimis*. The Supreme Court has implied that the procedural protections appropriate for such matters should be less extensive than those required by *Wolff*, if they exist at all. *Baxter v. Palmigiano*, 425 U.S. 308, 323–24, 96 S.Ct. 1551, 1560–61, 47 L.Ed.2d 810 (1976); *Wolff v. McDonnell*, 418 U.S. at 539–40 & n.19, 94 S.Ct. at 2963–67 & n.19. *See also Vitek v. Jones*, 445 U.S. 480, 494, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980).[9] Furthermore, it is by no means clear that additional procedural protections would further this interest. The plaintiff, for example, has not suggested that he was actually prepared to present exculpatory evidence by means of the added procedures he demands. Finally, there is no doubt that the Allenwood authorities have a great interest in maintaining discipline and stability within their institution. *Bell v. Wolfish*, 441 U.S. at 546–48, 99 S.Ct. at 1877–78. It certainly can be assumed that a rule requiring officials to hold a full-fledged hearing every time they decide to impose minor punishment on a messy prisoner would unduly burden that interest.

---

7. As explained in *McKinnon*, "keeplock" is a disciplinary procedure in the New York prison system by which inmates are confined to their cells for 23–24 hours a day and thereby denied access to normal prison routine.

8. Tennessee law apparently permits a prisoner to be placed in administrative segregation when the authorities have reason to predict that the move will further internal security. The Court of Appeals concluded that in such instances, the convict needs a fuller explanation of the officials' rationale. In the typical

*Wolff* situation, of course, the prisoner simply gets written notice of the charge. *Bills* cases, conversely, require that the inmate be apprised of the custodian's grounds for preventive segregation. Without this special notice, any hearing would be a sham.

9. O'Callaghan, on the other hand, would have this court grant him a procedural right in excess of those established by *Wolff v. McDonnell, viz.*, cross-examination.

**770**

## ORDER

Now, this 8th day of April 1981, the following are ordered:

(1) O'Callaghan's claim for injunctive relief is dismissed as moot;

(2) the defendants are granted summary judgment in all other respects; and,

(3) the Clerk of Court shall close the case file.