884 F.2d 581
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Jewell WILLIAMS, Defendant-Appellant.
 No. 88-1942.
 United States Court of Appeals, Sixth Circuit.
 Sept. 1, 1989.
 
 Before ENGEL, Chief Judge, and KEITH and BOYCE F. MARTIN, Jr., Circuit Judges.
 BOYCE F. MARTIN, JR., Circuit Judge.
 
 
 1
 Robert Jewell Williams appeals the judgment of the district court revoking his probation and imposing a custodial sentence. We affirm.
 
 
 2
 On December 3, 1985, Williams pled guilty to an indictment charging him with two counts of wire fraud in violation of 18 U.S.C. Sec. 1343. The plea agreement provided for a maximum term of three years imprisonment on count one, and a consecutive five-year probationary term on count two. Williams admitted he had devised a scheme in which he obtained the numbers of valid American Express Travelers Checks from out-of-state travel agencies and then used these numbers to report "lost" checks and to obtain substitutes for them.
 
 
 3
 On January 30, 1986, Williams was sentenced to three years imprisonment on count one, to be served concurrently with a prior state sentence, and to a consecutive five-year term of probation. On September 21, 1987, Williams was released from custody, and he began serving his term of probation.
 
 
 4
 On December 1, 1987, a federal grand jury in the Eastern District of Michigan indicted Williams on nine new counts of wire fraud for again attempting to defraud American Express through a scheme similar to that charged in the 1985 indictment. Williams entered a guilty plea to counts seven and nine of that indictment on December 29, 1987, pursuant to another plea agreement. The district court sentenced Williams on March 3, 1988, to two consecutive four-year custodial terms, the maximum allowed under the agreement. Williams was then incarcerated at the Federal Correctional Institute at Milan, Michigan.
 
 
 5
 On April 12, 1988, while Williams was serving the wire fraud sentence he received in March, the United States Probation Officer assigned to Williams filed a petition seeking a warrant for his probation violation. This warrant was based on the crimes for which Williams had been sentenced on March 3, 1988. A warrant was issued April 12, but was not executed until June 30, 1988. A hearing was held on August 25, 1988, at which Williams admitted to the probation violations. The district court revoked Williams' probation and sentenced him to three years in custody, consecutive to the two four-year terms imposed on March 3, 1988, less 164 days. Williams filed a timely notice of appeal from the judgment.
 
 
 6
 Williams does not here challenge the eight-year sentence he received for wire fraud on March 3, 1988. Moreover, he does not dispute the fact that these crimes violated his probation. He does, however, argue that the three-year probation violation sentence he received on August 25, 1988, violated his rights to due process and fundamental fairness.
 
 
 7
 Williams argues that due process and fundamental fairness require United States Probation Officers to begin probation revocation proceedings in an expeditious fashion once they have reason to believe there is a probation violation. He asserts that his probation revocation proceedings should have been held within a reasonable time after he was indicted for wire fraud in December 1987 because the ensuing delay prejudiced him in some way.
 
 
 8
 In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court held that the requirements of due process apply to the revocation of a parolee's parole. Specifically, it held that a parolee is entitled to two hearings. First, due process requires "a 'preliminary hearing' to determine whether the arrested parolee has committed acts that would constitute a violation of parole conditions." Id. at 485 (citations omitted). Second, a parolee is entitled to a revocation hearing "prior to the final decision on revocation by the parole authority." Id. at 487-88. This revocation hearing "must be tendered within a reasonable time after the parolee is taken into custody." Id. at 488. In Gagnon v. Scarpelli, 411 U.S. 478, 472 (1972), the Court extended these same procedural guarantees to probationers whose probation is revoked.
 
 
 9
 Williams argues that his revocation hearing was not held within a "reasonable time." Williams was sentenced for wire fraud on March 3, 1988, yet a warrant for violation of probation was not issued until April 12, 1988. This warrant was not executed until June 30, 1988. Moreover, Williams' probation revocation hearing was not held until August 25, 1988. During all this time, Williams was incarcerated at the Federal Correctional Institute at Milan, Michigan, within the jurisdiction of the court that had jurisdiction over Williams' probation. The delay was not caused by Williams' unavailability.
 
 
 10
 Williams argues that he was prejudiced by this delay. Had Williams' custodial term been limited to the eight-year sentence he received on March 3, 1988, under 18 U.S.C. Sec. 4205 Williams would have been eligible for parole after serving 32 months. The United States Parole Commission actually determined that Williams should be eligible for parole after serving only 30 months. The addition of a three-year consecutive sentence for violating parole changed this computation by increasing the total sentence to eleven years. Consequently, under 18 U.S.C. Sec. 4205, Williams must serve 44 months before being eligible for parole. He would have been released May 9, 1990, but now must wait until July 8, 1991. Williams asserts that he would not have had to serve this additional time had his probation revocation taken place before his sentencing for wire fraud in March 1988. Williams asserts that the only reason the district court sentenced him to eight years was to ensure his participation in a drug rehabilitation program for at least 32 months. Instead, Williams must now serve at least 44 months.
 
 
 11
 Even with this litany of delays, we find no prejudice in this case. In Moody v. Daggett, 429 U.S. 78 (1976), the Supreme Court held that a parolee who has been convicted and incarcerated for one crime while on parole for another is not constitutionally entitled to a prompt parole revocation hearing for a parole violation warrant which has been issued but not executed. In Moody, the petitioner, Minor Moody, shot and killed two people on an Indian reservation while on parole after serving part of a ten-year sentence for rape. Id. at 80. Moody pled guilty to manslaughter and second degree murder and was sentenced to two concurrent ten-year sentences. Id. Soon after Moody's incarceration, the United States Board of Parole issued but did not execute a parole violation warrant. Id. The Board denied Moody's request to execute the warrant immediately so that any sentence he received for violating his parole would run concurrently with the homicide sentences. Id. at 81. Moody filed a habeas corpus action seeking to have the parole violation warrant dismissed on the ground that he had been denied a prompt hearing as required by Morrissey v. Brewer. Id. The Court held that "in holding that '[t]he revocation hearing must be tendered within a reasonable time after the parolee is taken into custody,' Morrissey, 408 U.S., at 488, we established execution of the warrant and custody under that warrant as the operative event triggering any loss of liberty attendant upon parole revocation." Moody, 429 U.S. at 87. In other words, "the loss of liberty as a parole violator does not occur until the parolee is taken into custody under the warrant." Id. (emphasis added). The Court found that Moody's confinement and consequent loss of liberty did not derive "in any sense from the outstanding parole violator warrant, but from his two ... homicide convictions." Id. at 86.
 
 
 12
 As we noted, the facts of this case establish that the issuance and execution of Williams' warrant were not carried out with the utmost speed. There was some delay in conducting Williams' revocation hearing. Williams has not shown harm by these delays. Although Williams was incarcerated from the time of his arrest on November 8, 1987, until his probation hearing August 25, 1988, he did not suffer a loss of liberty under the warrant for his probation violation. During this time Williams' "confinement and consequent liberty loss derive[d] not in any sense," Moody, 429 U.S. at 86, from his probation violation for his December 1985 wire fraud conviction. This confinement derived from his December 1987 wire fraud conviction. Williams was never in custody under his parole violation warrant, even after it was executed, because he was already in custody for a subsequent wire fraud indictment and conviction. Thus, the "operative event triggering any loss of liberty attendant upon [probation] revocation," Moody, 429 U.S. at 27, never occurred.
 
 
 13
 Even if we assume arguendo that Williams was in custody under the warrant after it was issued April 12, 1988, or executed June 30, 1988, it is difficult to see how Williams was in any way prejudiced by this delay. Williams' interest in protecting his liberty was not hampered by the loss of any evidence, the unavailability of witnesses or the natural loss of memory over time. See Moody, 429 U.S. at 85. By the time of his probation hearing, Williams had already pled guilty and been convicted of the offense which also constituted the probation violation. Thus, the availability of these resources was irrelevant in this case.
 
 
 14
 Williams was not otherwise prejudiced by the delay in this case. Williams' argument that the district court would have sentenced him to less than eight years for wire fraud had his sentence for probation violation already been set is pure speculation. At the time of sentencing, the court was well aware of the pending probation violation warrant against him. The court could have imposed a concurrent sentence to whatever sentence he received for the probation violation, but it chose not to do so. Moreover, we are not convinced that the only reason the court imposed an eight-year sentence was to ensure Williams' compliance with a drug rehabilitation program. Although it appears that drug therapy was a factor in the court's decision, the record is full of remarks by the sentencing judge that Williams spent his life avoiding responsibility and blaming others for his misfortunes. The eight-year term could as well be interpreted as an opportunity for Williams to shoulder the responsibility himself.
 
 
 15
 Williams makes three other arguments that require our attention. First, he argues that the district court lacked the authority to make the sentence imposed for violating his probation run consecutive to his subsequent wire fraud conviction sentence. This argument is without merit. A sentence imposed upon revocation of probation may be required to be served consecutive to the sentence for a crime committed while on probation, even where this crime is also the basis for the probation revocation. United States v. Olivares-Martinez, 767 F.2d 1135, 1137 (5th Cir.1985).
 
 
 16
 Second, Williams argues that the eleven-year sentence he received was inordinate and unfair punishment for a $200 nonviolent fraud. Williams does not expressly claim that his sentence violates the eighth amendment's ban on cruel and unusual punishment, but that is the gist of his argument. This argument is also without merit. The sentence of two consecutive four-year terms was well within the statutory limit of 18 U.S.C. Sec. 1343 as well as the new Sentencing Guidelines. The three-year sentence for violating the conditions of probation for the initial wire fraud was also proper. "It is well established that 'a sentence imposed by a federal district judge, if within statutory limits, is generally not subject to review.' " United States v. Brummett, 786 F.2d 720 (6th Cir.1986) (quoting United States v. Tucker, 404 U.S. 443, 447 (1972)). In the past, we could only modify or change a sentence where the sentence exceeded the statutory maximum or where the sentencing court relied upon incorrect information or failed to exercise discretion in imposing an appropriate penalty. See Yates v. United States, 356 U.S. 363, 366-67 (1958) (per curiam). That has changed. We now seem able to review sentences to see whether they are proportional to the crimes committed. Solem v. Helm, 463 U.S. 277 (1983). This represents a sharp change with the past. See, e.g., Dorszynski v. United States, 418 U.S. 424, 431 (1974) ("[O]nce it is determined a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end.") We conclude that the sentence imposed on Williams was not so grossly disproportionate to the crimes he committed as to constitute cruel and unusual punishment. See United States v. McCann, 835 F.2d 1184, 1187-88 (6th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 2004 (1988).
 
 
 17
 Finally, Williams argues that under 18 U.S.C. Sec. 3568 he is entitled to credit for the time spent in custody from the day the probation warrant was executed, June 30, 1988, until the day of his sentencing for probation violation, August 25, 1988. We have held that Williams was not in custody under the warrant at this time. Even if he was in custody under the warrant at this time, Williams was at the same time serving the wire fraud sentence he received on March 3, 1988. Under section 3568, Williams is entitled to receive credit for time spent in custody prior to sentencing. To credit Williams with the time he requests, however, would be to award him a double credit for this time. It would count, first as part of Williams' sentence for wire fraud, and second as part of his sentence for probation violation. Section 3568 does not permit double crediting. See, e.g., Doyle v. Elsea, 658 F.2d 512, 515 (7th Cir.1981).
 
 
 18
 For all the reasons stated above, the judgment of the district court is affirmed.