929 F.2d 702
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
David R. WELLS; Donald Hall, Plaintiffs-Appellants,
v.
Robert BROWN, Jr., et al., Defendants-Appellees.
 No. 90-1809.
 United States Court of Appeals, Sixth Circuit.
 April 1, 1991.
 
 On Appeal from the United States District Court for the Eastern District of Michigan, 90-71440, Zatkoff, J.
 E.D.Mich.
 AFFIRMED.
 Before KEITH and BOYCE F. MARTIN, Jr., Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 David Wells and Donald Hall, two Michigan inmates, appeal the district court's dismissal of their 42 U.S.C. Sec. 1983 action filed against numerous state prison officials. For the following reasons, we affirm the district court's order.
 
 I.
 
 2
 While David Wells and Donald Hall (collectively the "inmates" or "appellants") were serving sentences at the Lakeland Correctional Facility (in Coldwater, Michigan), a confidential informant told prison officials that the appellants were planning an escape. In response, prison officials increased the appellants' security classifications and transferred the appellants to the State Prison of Southern Michigan (in Jackson, Michigan). Upon their arrival in Jackson, prison officials placed the appellants "in solitary confinement for several days before removing them to a less stringent security classification." Wells v. Brown, 891 F.2d 591, 592 (6th Cir.1989). "Thirty-six days after their transfer and twenty-eight days after their removal from solitary confinement, plaintiffs received a hearing which they challenged not only for being late but also for falling short of the procedures guaranteed by Michigan prison regulations." Id.
 
 
 3
 Wells and Hall subsequently filed this 42 U.S.C. Sec. 1983 action against numerous state prison officials.[1] The appellants argue that the prison officials violated their due process rights by failing to give them a timely hearing before raising their security classifications, before transferring them, and before placing the two inmates in solitary confinement.
 
 
 4
 On June 21, 1990, the district court dismissed the inmates' action noting, inter alia:
 
 
 5
 This Court has previously addressed plaintiffs' due process claims with respect to reclassification and transfer. In its September 1, 1988 Memorandum Opinion and Order, this Court dismissed plaintiffs' original complaint. This Court concluded that to the extent regulations existed limiting the discretion of prison authorities on classification and reclassification of prisoners, such limitations were not so substantial so as to create a liberty interest protectable by due process. This Court found that plaintiffs were afforded hearings regarding their security reclassification, despite the fact the hearings were conducted 36 days late.
 
 
 6
 This Court concluded that the mere violation of state imposed time limits did not, as a matter of law, create a federal due process claim. Furthermore, the fact that the hearings were not conducted by attorneys was not a denial of due process. The Court concluded that pursuant to state law, prison employees may be assigned to act as hearing officers.
 
 
 7
 District Court's June 21, 1990 Memorandum Opinion and Order at 3 (citations omitted).
 
 
 8
 The appellants thereafter filed a timely notice of appeal.
 
 II.
 Prison Transfer
 
 9
 It is well settled that inmates have no constitutional right to be incarcerated in any particular institution and may be transferred at the discretion of state officials unless the state has created a liberty interest in remaining in a particular institution. See Olim v. Wakinekona, 461 U.S. 238, 245-51 (1983). Notwithstanding the appellants' assertions to the contrary, the applicable Michigan statute does not create a liberty interest in remaining imprisoned in a particular institution:
 
 
 10
 Under rules promulgated by the director of the department with the approval of the commission, the assistant director in charge of the bureau of penal institutions ... may cause the transfer or retransfer of a prisoner from a penal institution to which committed to any other penal institution, or temporarily to a state institution for medical or surgical treatment.
 
 
 11
 Mich.Comp.Laws Ann. Sec. 791.265. Accordingly, the appellants did not have a constitutionally protected liberty interest in remaining at the Lakeland Correctional Facility.
 
 Administrative Segregation
 
 12
 Though there is no inherent constitutional right to remain free of administrative segregation, see Hewitt v. Helms, 459 U.S. 460, 468 (1983), a state may create such an interest which would then be subject to due process protection. See generally Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 464 n. 4 (1989) ("It should be obvious that the mandatory language requirement is not an invitation to courts to search regulations for any imperative that might be found. The search is for relevant mandatory language that expressly requires the decisionmaker to apply certain substantive predicates in determining whether an inmate may be deprived of the particular interest in question." (emphasis in original)).
 
 
 13
 Though the appellants correctly note that the Michigan Administrative Code requires a hearing within four days of administrative segregation, see Mich.Admin.Code r. 791.4405, the appellants mistakenly argue that the late hearing (conducted 36 days after the appellants were administratively segregated) violated their procedural due process rights. As the Supreme Court has previously stated:
 
 
 14
 Respondent seems to suggest that the mere fact that Pennsylvania has created a careful procedural structure to regulate the use of administrative segregation indicates the existence of a protected liberty interest. We cannot agree. The creation of procedural guidelines to channel the decisionmaking of prison officials is, in the view of many experts in the field, a salutary development. It would be ironic to hold that when a State embarks on such desirable experimentation it thereby opens the door to scrutiny by the federal courts, while States that choose not to adopt such procedural provisions entirely avoid the strictures of the Due Process Clause....
 
 
 15
 Nonetheless, in this case the Commonwealth has gone beyond simple procedural guidelines. It has used language of an unmistakably mandatory character.... [O]n balance we are persuaded that the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest.
 
 
 16
 That being the case, we must then decide whether the process afforded respondent satisfied the minimum requirements of the Due Process Clause. We think that it did. The requirements imposed by the Clause are, of course, flexible and variable dependent upon the particular situation being examined. In determining what is "due process" in the prison context, we are reminded that "one cannot automatically apply procedural rules designed for free citizens in an open society ... to the very different situation presented by a disciplinary proceeding in a state prison." "Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." These considerations convince us that petitioners were obligated to engage only in an informal, nonadversary review of the information supporting respondent's administrative confinement, including whatever statement respondent wished to submit, within a reasonable time after confining him to administrative segregation.
 
 
 17
 Hewitt v. Helms, 459 U.S. at 471-72 (emphasis added) (citations omitted). See also Id. at 476 n. 8 ("The [informal, nonadversary] proceeding must occur within a reasonable time following an inmate's transfer, taking into account the relatively insubstantial private interest at stake and the traditionally broad discretion of prison officials.").
 
 
 18
 Though Wells and Hall received their administrative hearing 36 days late, the district court correctly concluded that "an inadvertent delay of 36 days creates a mere violation of the state imposed time limits that does not, as a matter of law, create a federal due process claim." District Court's September 1, 1988 Memorandum Opinion and Order at 4. Accordingly, we are satisfied that the appellants received all the process that was due--an informal and nonadversarial evidentiary review conducted within a reasonable time following their administrative segregation.
 
 Security Reclassification
 
 19
 Though an inmate has no right to a particular classification status under federal law, Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976), such a right may arise under state law. Beard v. Livesay, 798 F.2d 874, 877 (6th Cir.1986). Procedural guidelines alone, however, are not enough to create a liberty interest. Hewitt v. Helms, 459 U.S. at 471-72. Reclassification regulations create a liberty interest only if they mandate "specific substantive predicates" to particular classifications. Id.
 
 
 20
 After concluding that Michigan's Administrative Code[2] created a "protectable liberty interest in the prisoner reclassification process," District Court's September 1, 1988 Memorandum Opinion and Order at 3, the district court judge properly determined that the administrative hearing satisfied the appellants' rights to an informal, nonadversarial evidentiary review conducted within a reasonable time following their security reclassifications. See Hewitt v. Helms, 459 U.S. at 471-72. Though the district court's second opinion[3] contradicted the district court's earlier opinion which stated that a Michigan inmate being considered for reclassification has a protected liberty interest, we need not address the discrepancy--even if Michigan has created a protected liberty interest regarding inmate reclassification, we conclude that the appellants' procedural due process rights were satisfied by the post-reclassification hearing.
 
 III.
 
 21
 For the aforementioned reasons, we AFFIRM the district court's June 21, 1990 Memorandum Opinion and Order.
 
 
 
 [1]
 The appellants' action was originally brought against the prison officials in their official capacities, but was dismissed by this court in light of the Supreme Court's holding in Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989) (state officials sued in their official capacities for damages are absolutely immune from liability under the Eleventh Amendment). See Wells v. Brown, 891 F.2d at 592. The appellants thereafter filed a new complaint in this action naming the prison officials in their individual capacities only
 
 
 [2]
 "A resident being considered for reclassification to a more restrictive level of security is entitled to an opportunity for a hearing." Mich.Admin.Code r. 791.4401(5)
 
 
 [3]
 "[T]o the extent regulations existed limiting the discretion of prison authorities on classification and reclassification of prisoners, such limitations were not so substantial so as to create a liberty interest protectable by due process." District Court's June 21, 1990 Memorandum Opinion and Order at 3