**John G. PRICE, et al., Plaintiffs,**

v.

**Walter BAMBERG, et al., Defendants.**

Civ. A. No. 93–D–1273–N.

United States District Court,
M.D. Alabama, N.D.

Dec. 8, 1993.

Stephen R. Glassroth, Montgomery, AL, Marcia G. Shein, Atlanta, GA, Jeffery C. Duffey, Montgomery, AL, for plaintiffs.

D. Broward Segrest, Asst. U.S. Atty., Montgomery, AL, for defendants.

### MEMORANDUM OPINION AND ORDER

De MENT, District Judge.

The petitioners, John G. Price and David G. Price, pursuant to 28 U.S.C. § 2241(c)(3), filed a petition for writ of habeas corpus on October 15, 1993, seeking relief from the conditions of their confinement. For the reasons set forth below, the petition for writ of habeas corpus is due to be denied.

### Facts

In July 1993, the petitioners were convicted of conspiring to commit murder in violation of 18 U.S.C. §§ 2 and 1958.[1] During the trial, the petitioners were held in the Montgomery County jail. After their convictions, the petitioners were moved to Dothan, Alabama. Fearing the petitioners were an escape risk, the U.S. Marshals separated the two petitioners by moving David Price to the Coffee County Jail in New Brocton, Alabama. On August 26, 1993, the petitioners were again moved. This time they were sent to the U.S. Penitentiary in Atlanta, Georgia, a high security facility, and they remain there at this time, awaiting the court's ruling on their motion for new trial. They are in administrative detention and are held in isolation cells. Pursuant to the court's order of September 20, 1993, the defendants' telephone conversations, with the exception of those with their attorneys, are monitored in accordance with the Bureau of Prisons' policy and procedure. Also, the petitioners' correspondence, with the exception of legal mail, is screened in accordance with the Bureau of Prisons' policy and procedure.

### Jurisdiction

Although no objections have been raised, there is an issue as to whether the district court has subject matter jurisdiction over the Prices' habeas petition. The court must consider this issue because subject matter jurisdiction cannot be waived. *See Stacey v. Warden, Apalachee Correctional Inst.,* 854 F.2d 401 (11th Cir.1988). 28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." Some courts have interpreted this provision as implying that, under § 2241, petitions may be brought only in the district court for the district in which the inmate is incarcerated. *See Fernandez v. United States,* 941 F.2d 1488 (11th Cir.1991). If this is the rule, then, this court would lack jurisdiction over this petition because the petitioners are incarcerated in Atlanta, Georgia, which is clearly not within the territorial jurisdiction of this court. However, the more appropriate interpretation of § 2241 is found in *Braden v. 30th Judicial Cir. Ct. of Ky.,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). In *Braden,* the petitioner, who was imprisoned in Alabama, filed a habeas corpus petition in a Kentucky district court requesting that a Kentucky state court grant him a speedy trial on an existing indictment. The respondents argued that the Kentucky district court lacked jurisdiction because the prisoner was not confined within its territorial jurisdiction. The Supreme Court disagreed. The Court held that "[t]he writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden,* 410 U.S. at 494, 93 S.Ct. at 1129. "Read literally, the language of § 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian." *Id.* at 495, 93 S.Ct. at 1130.

In *Stacey v. Warden,* 854 F.2d 401 (11th Cir.1988), the Eleventh Circuit considered the application of *Braden* in a § 2241 petition. The court construed *Braden* as holding that the Alabama warden acted as Ken-

---

1. 18 U.S.C. § 1958 is the murder-for-hire statute which provides in part that:

Whoever travels in or causes another . . . to travel in interstate . . . commerce, or uses or causes another . . . to use the mail or any facility of interstate . . . commerce, with intent that a murder be committed . . . as consideration for the receipt of, or as consideration for

a promise or agreement to pay, anything of pecuniary value shall [be guilty of a violation of this statute.]

18 U.S.C. § 1958. In this case, the petitioners were convicted for hiring two undercover FBI agents to murder three of their business associates, David Hawthorne, Kenny Price, and Sy Schafer.

tucky's agent in holding the petitioner pursuant to the Kentucky detainer and that this sufficiently established Braden's custody in Kentucky for the purposes of 28 U.S.C. § 2241(a).[2]

Applying *Braden* to this case leads to the conclusion that the court does have subject matter jurisdiction. The Bureau of Prisons in Georgia, which is holding the petitioners, is acting as an agent for the United States Marshal of the Middle District of Alabama, in whose custody the petitioners constructively remain until sentencing. Thus, the petitioners are sufficiently "in custody" in the Middle District of Alabama for the purpose of establishing jurisdiction pursuant to 28 U.S.C. § 2241(a).

### Basis for the Writ

■ In the writ, the petitioners have set forth three main reasons which they contend support their 28 U.S.C. § 2241 motion.[3] The three principal grounds asserted by the petitioners are as follows: (1) the conditions of confinement violate a constitutional right; (2) the convicted prisoner's classification violates the Federal Constitution or other law; and (3) the custody is subject to collateral attack by reasons of the conduct of prison or parole authorities.

Though it is not clear, the petitioners appear to assert that they are entitled to relief under § 2241 because the **conditions** of their confinement as opposed to the **validity** of their confinement are unconstitutional. The Supreme Court of the United States has touched on this issue several times but never directly decided it. *See Bell v. Wolfish,* 441 U.S. 520, 527, 99 S.Ct. 1861, 1868, 60 L.Ed.2d 447 (1979); *Preiser v. Rodriguez,* 411 U.S. 475, 482, 93 S.Ct. 1827, 1832, 36 L.Ed.2d 439 (1973); *Wilwording v. Swenson,* 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971). Nonetheless, the law in the Eleventh Circuit appears reasonably settled. In *Cook v. Hanberry,* 596 F.2d 658 (5th Cir.1979), the court held that even if a prisoner proves an allega-

tion of mistreatment in prison that amounts to cruel and unusual punishment, he is not entitled to release. *See Gomez v. United States,* 899 F.2d 1124, 1126 (11th Cir.1990).

28 U.S.C. § 2241(c)(3) provides that the writ of habeas corpus shall not extend to a prisoner unless the prisoner is "**in custody** in violation of the Constitution or laws or treatises of the United States." (emphasis added). The statute plainly refers to the constitutionality or legality of the basis of the prisoner's **custody** and not the **conditions** of that custody which a prisoner may experience while incarcerated.

Petitioners assert that *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), stands for the proposition that custody may be subject to collateral attack by reasons of the conduct of prison or parole authorities. In *Moody,* the Court considered whether a federal parolee imprisoned for a crime committed while on parole is constitutionally entitled to a prompt parole revocation hearing when a parole violator warrant is issued and lodged with the institution of his confinement but not served on him. *Moody* thus relates to the conduct of prison or parole authorities as affecting the validity of detention rather than the conditions of detention.

Accordingly, the court finds that petitioners are not entitled to habeas corpus relief. Thus, even if the conditions of the petitioners' confinement are unconstitutional, this action is not the proper remedy and the petition for a writ of habeas corpus is due to be denied.

### Merits of the Petitioners' Claims

Even if the petitioners had presented adequate grounds to support the habeas petition, the petition would still be denied because petitioners' claims are meritless. However, prior to the court's foray into the petition's morass of claims, the court feels compelled to reiterate Judge Edmondson's comment in

---

**2.** The *Fernandez* court did not mention or rely on *Braden* in reaching its decision.

**3.** Actually, beginning on page 10 of the petition and continuing to page 12, the petitioners present of laundry list of grounds to support a habeas petition. Three of the grounds are in bold print.

The court will assume that these are the principal grounds of the petition and will only address these grounds. The remaining grounds are unsupported and thus need not be addressed by the court.

*United States v. Reyes–Vasquez,* 905 F.2d 1497 (11th Cir.1990).

> ˙Plain talk by lawyers is necessary for clear understanding by judges. "Whenever a litigant has a meritorious proposition of law that he is seriously pressing upon the attention of the trial court, he should raise that point in such clear and simple language that the trial court may not misunderstand it, and if his point is so obscurely hinted at that the trial court quite excusably may fail to grasp it, it will avail naught to disturb the judgment on appeal." *Clark v. Linley Motor Company,* 126 Kan. 419, 268 P. 860, 861 (1928).

*Reyes–Vasquez,* 905 F.2d at 1500. Thus, while the court may not have a duty to "interpret imaginatively," the court will endeavor to try to understand and address the petitioners' claims. *See United States v. Madruga,* 810 F.2d 1010, 1014 (11th Cir.1987).

Petitioners first contend that imposition upon them of increased security and highly restrictive conditions violates their rights secured under the fifth amendment. The petitioners apparently argue that they have some kind of liberty interest in less restrictive conditions and that before more restrictive conditions are imposed on them, they are entitled to a hearing and other procedural protections. Petitioners assert that since they have not been formally sentenced, the increased security and restrictive conditions constitute punishment which deprives them of a protected liberty interest.

■ This claim is patently frivolous. The due process protections of the fifth amendment extend no further than that of the fourteenth amendment. The Supreme Court has plainly held that the Due Process Clause does not create an interest in being confined to a general population cell as opposed to segregation. *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983). Indeed, the *Hewitt* court held that segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration. *Id.* at 468, 103 S.Ct. at 869. Moreover, it is well established that prison officials may transfer an inmate anywhere within a prison system without implicating a prisoner's con-stitutional rights. *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). In *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), the Court held that the Due Process Clause does not entitle a convicted prisoner to any procedural protections when he is transferred to a prison at which the conditions are substantially less favorable absent a state law or practice conditioning such transfers on proof of serious misconduct or the occurrence of other specified events. Thus, the mere fact that prison conditions at one facility are more disagreeable than conditions in another is insufficient to signify the deprivation of a protected constitutional interest.

■ Throughout the petition for habeas corpus relief, the petitioners correctly note that a liberty interest may be created from various sources other than the Constitution itself. However, insofar as the court can discern, the only basis for the claim that a liberty interest exists other than in the Constitution is the following argument:

> The policy of housing prisoners awaiting to be sentenced in a facility in the district to which they are to be sentenced has created a liberty interest. The policy of transferring prisoners to high security institutions as well as other sanctions imposed, to those who pose a high security risk, create a liberty interest in remaining free from a transfer and free from restrictive conditions. (Pet'rs' Br. at 13).

Petitioners identify no statute or regulation which forms the basis of their contention that petitioners have a liberty interest in being free from ·incarceration under heightened security measures. Rather, petitioners apparently rely on the general practice in this district of incarcerating prisoners in this district while they are awaiting sentence. In *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the Court held that a liberty interest, though not secured by any formal contractual provision, may be secured by a "no less binding understanding" fostered by public officials. *Perry,* 408 U.S. at 599, 92 S.Ct. at 2698. In *Sindermann,* the understanding which created a legitimate expectation arose not merely because of regu-

lar past practices, but was supported by published guidelines which the court concluded could create the necessary legitimate expectations.

In the context of the present case before the court, *Sindermann* is inapposite. Petitioners generally are correct that the prevailing practice in the Middle District of Alabama is to incarcerate those convicted persons who have yet to be sentenced in this district. Standing alone, this practice is insufficient to give rise to a protected liberty interest.

> A constitutional entitlement cannot "be created—as if by estoppel—merely because a wholly and expressly discretionary ... privilege has been granted generously in the past...." No matter how frequently a particular form of clemency has been granted, the statistical probabilities standing alone generate no constitutional protections.

*Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 465, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981).

In support of their practice that they were entitled to a hearing before placement in segregation, petitioners rely on *Hardin v. Straub,* 954 F.2d 1193 (6th Cir.1992). Petitioners reliance on this case is misplaced. *Hardin* involved placement of an inmate in segregation under a rule which required an opportunity for a hearing before such placement. As noted above, petitioners identify no similar rule applicable to them. In the absence of any allegation concerning the existence of statutes or regulations which set forth specific procedures for confining an inmate to segregation, petitioners' liberty interest claim fails. *See e.g. Dudley v. Stewart,* 724 F.2d 1493 (11th Cir.1984).

Petitioners also claim that since they have not been formally sentenced, "any change in condition in their confinement, which results in increased punishment, is violative of their constitutional rights." This claim is meritless. First, it is premised on the existence of a liberty interest. As previously discussed, no such interest exists. Second, the conviction of the petitioners extinguished petitioners' asserted right to be incarcerated in a particular location. *See Greenholtz v. In-*

*mates of the Neb. Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979); *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Since as noted above, segregation is the type confinement which prisoners legitimately may expect sometime during the period of their incarceration, petitioners' claim that confinement in segregation or under heightened security conditions amounts to punishment should be denied.

Accordingly, it is CONSIDERED and ORDERED that the John G. Price and David G. Price's petition for writ of habeas corpus be and same is hereby DENIED.